**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**Charlotte Division**

| | | |
|---|---|---|
| KEVIN TRUONG, individually and on behalf of a class of all persons and entities similarly situated; | : : : : | Case No. 3:23-cv-00079-MOC-DCK |
| Plaintiff, | : : | |
| v. | : : | |
| TRUIST BANK, | : : | |
| Defendant. | : | |

## MOTION FOR PRELIMINARY APPROVAL

Pursuant to Fed. R. Civ. P. 23(e), Plaintiff Kevin Truong ("Truong") moves for preliminary approval of a classwide settlement agreement with the defendant Truist Bank ("Truist") that would resolve this litigation on behalf of a settlement class of similarly situated individuals. In support hereof, Plaintiff states:

## I. INTRODUCTION

After extensive discovery and two mediations before the Honorable Steven M. Gold (Ret.) of JAMS, the Parties reached a non-reversionary classwide settlement agreement for $4,100,00 that would resolve the claims of approximately 5,998 persons who received prerecorded calls from Truist concerning an unrelated account. Appendix 1 – Settlement Agreement. Truong estimates that the class members will receive approximately $440 each without the need to submit a claim form, as all class members who do not opt out will be sent a check.[1] Further there is no clear sailing agreement regarding the requested incentive award or

---

[1] The settlement fund will be used to pay the cost of class notice and settlement administration, any attorneys' fees and expenses, and any incentive award approved by the Court. *App. 1* at ¶ 33, 51-56. The total settlement fund net those payments is estimated to be approximately $2,654,485 which equals approximately $440 per class member.

attorney fees, but instead Plaintiff will file a petition for both. Additionally, the notice will advise the class of both, and the underlying petition will be published on the settlement website.

This is an outstanding result for the class. It is even more outstanding when compared to the majority of Telephone Consumer Protection Act ("TCPA") class settlements that require a claim form where the estimated class recovery is based on a five to ten percent claim rate. In this case, a five percent claim rate would equal $8,776 per claimant and a ten percent claim rate would equal $4,388 per claimant, with the remaining class members receiving nothing. In contrast here, every class member will receive approximately $440, which is significant monetary relief considering that the TCPA provides statutory damages of $500 per violation for the claims at issue in this case. The proposed settlement is more than fair and reasonable, and satisfies Rule 23's requirements for certification. Accordingly, Truong respectfully requests that the Court grant preliminary approval of the Settlement, certify the proposed Settlement Class, appoint Truong as class representative and his attorneys as Class Counsel, approve the proposed form and method of Class Notice, and set a Final Approval Hearing.

## II. RELEVANT BACKGROUND

Truong filed a class action complaint alleging Truist violated the Telephone Consumer Protection Act, 47 U.S.C. § 227(b) by placing prerecorded calls to the cellular telephone numbers of non-account holders without prior express consent. Doc. 1.

The TCPA forbids prerecorded calls to cellular telephone numbers unless made with the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A); *Am. Ass'n of Political Consultants, Inc. v. FCC*, 923 F.3d 159, 162 (4th Cir. 2019).

Truong filed the Action on February 10, 2023 on behalf of himself and a putative class of similarly situated individuals, alleging Truist placed prerecorded telephone calls to his cellular telephone number even though he was not a Truist account holder and had never consented to

2

receive such calls. Doc. 1 at ¶ 8-26.  In his complaint, Truong proposed certification of a class of persons who also received prerecorded calls on their cellular telephone numbers concerning an unrelated Truist account. *Id.* at ¶ 28.

On April 5, 2023, Defendant filed its answer denying Plaintiff's allegations, denying that class certification was appropriate, and asserting sixteen affirmative defenses. Doc. 19.  On May 2, 2023, the Court entered a Pretrial Order and Case Management Plan governing discovery and other case management deadlines. Doc. 24.

The parties proceeded to exchange extensive discovery concerning Plaintiff's individual claims and Defendant's records of calls to potential class members, and presented discovery disputes with the court (see Doc. 38 – denying motion for protective order).  After these proceedings, the Parties participated in a private mediation with the Honorable Steven M. Gold (Ret.) of JAMS on October 7, 2024 in person in New York.  The parties exchanged mediation briefs in advance of the mediation, and vigorously defended their claims and asserted defenses during the mediation.  However, the Parties were unable to reach a settlement.

Following the mediation, Defendant provided additional information concerning Defendant's records of calls to potential class members and, on January 17, 2025, the Parties participated in a second mediation with Judge Gold.  During this second mediation, the parties reached an agreement in principle to resolve the action on a classwide basis, which the Parties formalized into the agreement set forth herein over the following weeks. See Doc. 45.

### III. THE PROPOSED SETTLEMENT

The Settlement Agreement is attached hereto as *Appendix 1*.  For purposes of preliminary approval, the following summarizes the Agreement's terms:

#### a. The Settlement Class.

The Settlement Class is defined as follows:

3

The subscribers or regular users of the 5,998 telephone numbers assigned to cellular telephone service in the United States to which Truist placed a prerecorded telephone call concerning an unrelated account between February 10, 2019, and August 31, 2022.

*App. 1* at ¶ 28.

### b. Monetary relief for Settlement Class Members.

The Agreement requires Defendant to create a non-reversionary Settlement Fund of $4,100,000 (*id.*at ¶ 51) from which each Settlement Class Member will be paid a pro rata share of the fund without the need to submit a claim form after payment of notice and administration costs, any attorneys' fees and expenses approved by the court, and any incentive award to the class representative approved by the Court. *Id.* at ¶ 34, 51-56. No amount of the Settlement Fund will revert to Defendant. *Id.* at ¶ 34, 68-69.

Plaintiff's Counsel estimate payments of approximately $440 to each class member assuming the court approves the above referenced payments from the Settlement Fund.[2] Payments will be made by check to each class member. *Id.* at ¶ 68. If, after expiration of those payments, there remains money in the Settlement Fund sufficient to pay at least $10.00 to each Settlement Class Member who cashed their initial Settlement Award check, that remaining money will be distributed on a pro rata basis to those Settlement Class Members in a Subsequent Distribution. *Id.* at ¶ 69.

If there is not enough money for a Subsequent Distribution, or if any checks or deposits from the Subsequent Distribution remain uncashed after the stale date, the remaining funds shall be distributed to a *cy pres*. *Ibid.* The Settlement Agreement calls for the Court to decide upon the

---

[2] The costs of notice and administration will be approximately $58,345. Plaintiff's counsels anticipates they will request one-third of the fund as a reasonable fee ($1,336,666); out of pocket expenses of $25,504; and incentive award of $25,000. Assuming these payments are approved, the net balance will be approximately $2,654,485, which is approximately $440 per class member in the approximately 5,998 person class.

4

appropriate *cy pres*, as the Parties have been unable to agree on the specific recipient. *Ibid.*

"In the context of class action settlements, a court may employ the cy pres doctrine to 'put the unclaimed fund to its next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class.'" *Nachshin v. AOL, Ltd. Liab. Co.*, 663 F.3d 1034, 1038 (9th Cir. 2011) "(quoting *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007)). Thus, a "cy pres distribution must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members." *Id.* at 1039. Thus, in a TCPA action "the case law . . . requires *cy pres* recipients to promote the objectives of the TCPA and benefit the interests of the class members." *Krakauer v. Dish Network, LLC*, No. 1:14-CV-333, 2020 U.S. Dist. LEXIS 199112, at *19 (M.D.N.C. Oct. 27, 2020)

In this case, subject to Court approval, Plaintiff suggests any funds remaining after a second distribution be sent to the National Consumer Law Center ("NCLC") as *cy pres* and *earmarked* for working to safeguard the protections of the TCPA. One would be hard pressed to find another organization more closely aligned with the class's interests than NCLC. NCLC has fought to preserve the TCPA's protections for years before Congress, before the Federal Communications Commission ("FCC"), and before the courts as an *amicus curiae*, and is a leading consumer advocacy organization on TCPA matters. Since 2014, it has commented on almost every major proceeding, and many minor proceedings, before the FCC concerning the TCPA. *See Robocalls & Telemarketing*, National Consumer Law Center, https://www.nclc.org/issue/robocalls-texts/ (last visited Apr. 10, 2025). NCLC staff meet regularly with staff of the former and current FCC Chairman's office as well as with staff of other Commissioners' office and staff of the Consumer and Governmental Affairs Bureau. *Id.* NCLC staff have also testified before both the House of Representatives and the Senate concerning the TCPA. *Id.* In addition, NCLC has submitted amicus briefs to the Supreme Court and Federal Courts of Appeal in numerous TCPA cases. *Id.* Thus,

5

NCLC's work reasonably approximates the interests pursued by the class. Given NCLC's proven record of TCPA advocacy, numerous courts have approved NCLC as a *cy pres* recipient in TCPA class actions, often over defendant's objection. *See e.g.*, *Braver v. Northstar*, 5:17-cv-00383-F (W.D. Okla. 2020), ECF No. 273; *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 205-06 (N.D. Ill. 2018); *Keim v. ADF Midatlantic, LLC*, 2020 U.S. Dist. LEXIS 49933, *11 (S.D. Fla. 2020); *Lee v. Global Tel*Link Corp.*, 2018 U.S. Dist. LEXIS 163410, *23-25 (S.D. Cal. 2018); *Martinez v. Medicredit, Inc.*, 2018 U.S. Dist. LEXIS 81818, *4-5 (E.D. Mo. 2018); *Jonsson v. USCB, Inc.*, 2015 U.S. Dist. LEXIS 69934, *30 (C.D. Cal. 2015); *Willett, et al. v. Redflex Traffic Systems, Inc.*, et al., Case No. 13-cv-01241-JCH-RHS, Doc. 269 (D.N.M. Oct. 24, 2016); *see also Legg v. AEO*, 14-cv-02440-VEC (S.D.N.Y. 2017) (TCPA) (approving NCLC for TCPA class case); *In re Convergent Outsourcing, Inc. Telephone Consumer Protection Act Litigation*, Master Docket No. 3:13-cv-1866-AWT (D. Conn. Nov. 10, 2016) (Same).

While Plaintiff does not doubt that Truist's suggested organization (Legal Aid of North Carolina (LANC)) does important work, it does not have a demonstrated history of advancing the objectives of the TCPA like NCLC, and therefore is, respectfully, not an appropriate cy pres *in this case*.  Truist's own cite shows NCLC was approved as an appropriate *cy pres* in a similar TCPA case. *See Krakauer v. Dish Network LLC*, 2023 U.S. Dist. LEXIS 182479, *(M.D.N.C. Oct. 11, 2023) (approving 1.7 million cy pres distribution to NCLC) .

In any event, LANC does not appear to offer services related to the TCPA (see e.g., https://legalaidnc.org/get-help (last visited April 10, 2025) and does not appear to have been approved as a cy pres recipient in a TCPA action.  It, accordingly, does not offer the next best use of unclaimed funds in this case and subjects the settlement to objection over *cy pres*.  For example, the Seventh Circuit reversed a *cy pres* award in a TCPA case to a local legal aid because, while "a worthy organization," it "does not directly or indirectly benefit . . . the victims of Turza's junk

6

faxes." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 689 (7th Cir. 2013).

Truist, for its part, suggests Legal Aid of North Carolina ("LANC") as the *cy pres* recipient. In support, Truist contends as follows: LANC is a "nonprofit law firm that provides free legal services in civil matters to low-income people in order to ensure equal access to justice and to remove legal barriers to economic opportunity." LANC, *About Us*, https://legalaidnc.org/about-us/ (last visited Apr. 1, 2025). With that mission in mind, LANC represents those in need in an array of consumer-protection cases, from debt collection actions to foreclosures, repossessions, and more. LANC, *Our Services*, https://legalaidnc.org/our-services/ (last visited Apr. 1, 2025). Courts across the country have found legal aid nonprofits like LANC as appropriate *cy pres* recipients in consumer-protection matters, including TCPA class action litigation. *See, e.g.*, *Krakauer v. Dish Network LLC*, No. 14-333, 2023 WL 6626112, at *4 (M.D.N.C. Oct. 11, 2023) (approving National Legal Aid and Defender Association as a *cy pres* recipient in TCPA class action settlement); *Michel v. WM Healthcare Sols., Inc.*, No. 10-638, 2014 WL 497031, at *26 (S.D. Ohio Feb. 7, 2014) (approving Legal Aid Society of Southwest Ohio as the *cy pres* recipient in TCPA class action settlement); *Gutierrez v. Barclays Grp.*, No. 10-1012, 2012 WL 12541830, at *2 (S.D. Cal. Mar. 12, 2012) (approving Legal Aid Society of San Diego as the *cy pres* recipient in TCPA class action settlement).

### c. Administration and Notice.

Costs of notice and administration will be deducted from the Settlement Fund. *Id.* at ¶ 51-52. The Parties have agreed that Verita will serve as the Settlement Administrator, subject to this Court's approval. *Id.* at ¶ 26. The Administrator will have the following duties: (1) performing name and address search based on the telephone numbers called; (2) issuing Class Notice as set forth below; (3) maintaining the settlement fund account; (4) setting up and maintaining the settlement website; (5) maintaining a list of persons who submit opt-out requests, and (6)

7

distributing payments from the settlement fund account. *Id.* at ¶ 59, 61-62, 67-69.

Within sixty (60) days of entry of the Preliminary Approval Order, the Administrator will issue notice via postcard (Ex. 2 to the Agreement) to all class members for whom the Administrator has a mailing address, and via email (Ex. 4 to the Agreement) to all class members for whom the Administrator has an e-mail address but not a mailing address. *Id.* at ¶ 59(A). Before sending the notice, the Administrator will perform a reverse look up for each telephone number in the Class List and will search for updated addresses via the USPS national change of address database. *Ibid.* The Settlement Administrator shall re-mail once any Notice returned as undeliverable and for which an alternative address can be located, and undertake reasonable means to locate alternative addresses for returned notices. *Ibid.*

The Administrator will also establish and maintain a website at www.tbtcpasettlement.com, wherein the email notice will be posted, along with instructions for selecting preferred payment methods, updating their address, opting out or objecting, as well as copies of the public pleadings, the Settlement Agreement, and any petitions for payment of attorneys' fees, expenses, and incentive awards. *Id.* at ¶ 59(B).

### d. Settlement Class release.

In exchange for the benefits allowed under the Settlement Agreement, Settlement Class Members who do not opt-out of the settlement will provide a release tailored to the specific practice at issue in this case. Specifically, they will release claims regarding "communications allegedly occurring without consent by Defendant." *Id.* at ¶ 70.

### e. Class Representative Incentive Award.

The Agreement provides that Plaintiff may petition the Court for an incentive award. *Id.* at ¶ 55. As noted above, there is no clear sailing provision as to this request. *Ibid.* The incentive award shall be paid out of the Settlement Fund and is subject to this Court's approval. *Ibid.* Neither

8

Court approval nor the amount of the incentive award is a condition of the Settlement. *Ibid.* Given Plaintiff's extensive efforts prosecuting this action for the Settlement Class, Plaintiff anticipates requesting an incentive award of $25,000.00. The petition for an incentive award and attorney fees will be filed the day notice will be mailed and posted on the settlement website for class members to review. Further, the Class Notice will advise the Settlement Class of Plaintiff's request. *Id.* at Ex. 2 (Postcard Notice), Ex. 4 (Email Notice).

### f. Attorneys' fees and costs.

At the same time as notice is sent, Plaintiff's Counsel will apply to the Court for an award of attorneys' fees and costs. *Id.* at ¶ 54. As with the incentive award, the Agreement does not contain a clear sailing agreement as to attorney fees or costs. *Ibid.* As will be addressed in Class Counsel's motion for attorneys' fees, courts in this district commonly award one-third of the common fund, plus reasonable expenses in common fund class settlements. *See, e.g.*, *Rodriguez v. Riverstone Cmtys.*, LLC, 2024 U.S. Dist. LEXIS 22802, *3 (E.D. N.C. Feb. 2, 2024) ("Cases in the Fourth Circuit routinely find that attorneys' fees representing thirty-three and one-third percent of the common fund are reasonable."); *Boger v. Citrix Sys., Inc.*, Civil Action No. 19-cv-01234-LKG, 2023 U.S. Dist. LEXIS 96379, at *34 (D. Md. June 1, 2023) (awarding one-third of the settlement fund in a TCPA case); *Krakauer v. Dish Network, L.L.C.,* No. 1:14-CV-333, 2019 U.S. Dist. LEXIS 22038, * 2 (M.D.N.C. Dec. 23, 2019) (awarding one-third of the common fund in a TCPA case).

As explained in the forthcoming petition, this amount is appropriate to compensate Class Counsel for the work performed in procuring a settlement for the Settlement Class and for the work remaining to be performed in documenting the settlement, securing Court approval of it, overseeing settlement implementation and administration, assisting Settlement Class Members, and obtaining dismissal of the action. It should be noted, however, that the Settlement is not

9

contingent on Court approval of an award of attorneys' fees or costs. *Id.* at ¶ 54.

Once again, this petition will be posted on the settlement website for class members to review. Further, the Class Notice will inform the Settlement Class Members that Class Counsel will seek one-third of the fund as well as the exact dollar amount this equals. *Id.* at Ex. 2 (Postcard Notice), Ex. 4 (Email Notice).

## IV. ARGUMENT

### a. The preliminary approval process.

The claims of a class may be settled only with court approval. Fed. R. Civ. P. 23(e). While preliminary approval is within the Court's discretion, "it has long been clear that the law favors settlement.'" *Binotti v. Duke Univ.*, No. 1:20-CV-470, 2021 U.S. Dist. LEXIS 225003, at *9 (M.D.N.C. Aug. 30, 2021) (quoting *United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992)). "This is particularly true in class actions." Ibid citing (*Reed v. Big Water Resort, LLC*, No. 2:14-cv-101583-DCN, 2016 U.S. Dist. LEXIS 187745 * 14 (D.S.C. May 26, 2016) (noting the "strong judicial policy in favor of settlements, particularly in the class action context.")

At the preliminary approval stage, the Court determines whether the settlement is 'within the range of possible approval,' such that there is 'probable cause to notify the class members of the proposed settlement.'" *Albert v. Glob. Tel*Link Corp.*, 2024 U.S. Dist. LEXIS 197800, at *14 (D. Md. Oct. 31, 2024) (quoting *Starr v. Credible Behav. Health, Inc.*, 2021 U.S. Dist. LEXIS 99783 (D. Md. May 26, 2021)). "At this initial stage, the Court must make 'a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms' and 'direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.'" *Ibid.*

In addition, the Court must first conditionally certify the class for settlement, by making "a preliminary determination that the proposed settlement class satisfies the prerequisites set forth in

10

Federal Rule of Civil Procedure 23(a) and at least one of the subsections of Rule 23(b)." *Id.* at 15-16.

### b. The Proposed Settlement Class Satisfies Rule 23

As Plaintiff demonstrates below, the Settlement Class satisfies Rule 23(a), which requires: (i) the proposed class be so numerous that joinder of individual class members is impracticable; (ii) there be questions of law or fact common to the class; (iii) the class representative's claims be typical of the class members' claims; and (iv) the class representative and counsel will fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a).

And, because the Settlement provides for monetary relief, the Settlement Class also satisfies Rule 23(b)(3)'s requirements that: (i) common questions of law or fact predominate over individual issues; and (ii) the class action device is superior to other means of resolving the claims. Fed. R. Civ. P. 23(b)(3). As explained below, the Settlement Class satisfies all of these prerequisites and should therefore be certified for settlement purposes.

### 1. The Settlement Class is sufficiently numerous.

Rule 23(a)(1) requires a class be so numerous that joinder of all members is impracticable. A class of as few as 40 is generally sufficient. *FWK Holdings, LLC v. Merck & Co. (In re Zetia (Ezetimibe) Antitrust Litig.)*, 7 F.4th 227, 234 (4th Cir. 2021) ("a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone"). Here, the Settlement Class consists of approximately 5,998 persons, which easily satisfies numerosity.

### 2. Commonality is satisfied.

Commonality requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The class claims must "depend upon a common contention . . . capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v.*

11

*Dukes*, 564 U.S. 338, 350 (2011). "A single question of law or fact common to the members of the [C]lass will satisfy the commonality requirement." *Id.* at 369.

Here, commonality is satisfied because the key questions can be resolved for the entire class in "one stroke," including (1) whether Defendant utilizes "a prerecorded voice" in its calls; and (2) whether Defendant obtains prior express consent from non-account holders to place robocall to their cellular telephone numbers. 47 U.S.C. 227(b)(1)(A). The answers to these questions will not vary among the class members.

### 3. Plaintiff's claims are typical.

A putative class representative also must demonstrate that his claims are typical of the claims of the class she seeks to represent. Fed. R. Civ. P. 23(a)(3). "The typicality requirement is met if a plaintiff's 'claim arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *Freeman v. Progressive Direct Ins. Co.*, 733 F. Supp. 3d 463, 489 (D.S.C. 2024).

That standard is satisfied here. Truong's claims and the claims of the settlement class are identical and flow directly from Truist's placement of prerecorded calls to cellular telephone numbers in violation of the TCPA. Thus, Plaintiff's TCPA claims arise out of the same "course of conduct that gives rise to the claims of the other class members" and "are based on the same legal theory." *Ibid.* Consequently, Plaintiff's claims are typical of the Class.

### 4. Plaintiff and Counsel are adequate.

Adequacy requires that Plaintiff and his counsel "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Here, both Plaintiff and proposed Class Counsel fully satisfy this requirement. In order to be an adequate representative, the named plaintiff must "be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625-26 (1997). Plaintiff meets this standard. Having

12

received prerecorded calls concerning unrelated Truist accounts, like every other class member, Plaintiff falls within the class definition and possesses the same interests as every other class member.

Plaintiff's counsel are also adequate to represent the class. They have extensive experience in complex litigation and consumer class actions involving TCPA claims, and have been found adequate and appointed as class counsel in dozens of actions arising under the TCPA and various other consumer protection statutes. *Appendix 2 - Sostrin Declaration* at ¶ 21-53.

### 5. Common questions predominate.

Rule 23(b)(3) requires that "the questions of law or fact common to the class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). This standard is satisfied where "the essential elements of the class members' claims can be proven at trial with common, as opposed to individualized, evidence." *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 399 (M.D.N.C. 2015). As just shown, the key questions in this litigation can be resolved for the class in a single stroke. To the extent any individual questions exist, they do not predominate this action.

### 6. A class action is the superior means of resolving this dispute.

Rule 23(b)(3) requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). This is particularly true in actions like this one, where numerous individual claimants each suffer a relatively small harm.

"The class action device is often superior where proceeding individually would be difficult for class members with small claims." *Mey v. Principal L. Grp., LLC*, Civil Action No. 5:23-CV-

13

46, 2025 U.S. Dist. LEXIS 2888, at *22 (N.D.W. Va. Jan. 7, 2025) (citing *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386, 132 S. Ct. 740, 181 L. Ed. 2d 881 (2012) (recognizing that plaintiffs are unlikely to pay a $350 filing fee to advance an individual TCPA claim for $500).

Here, the alternative to class resolution is approximately 6,000 individual lawsuits for modest statutory damages without the ability to recover attorneys' fees since the TCPA does not provide for fee shifting. A class action resolution to this litigation "avoids this problem by aggregating what would otherwise be a series of too small potential individual recoveries." *Id.* (quoting Braver v. Northstar Alarm Servs., LLC, 329 F.R.D. 320, 333 (W.D. Okla. 2018) (cleaned up)).

As each case would require resolution of identical factual and legal issues, the efficiencies achieved by class-wide resolution are obvious. In addition, there are no manageability issues here because the claims are being certified for purposes of settlement. *See, e.g.*, *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

### c.  The Proposed Settlement Warrants Preliminary Approval.

Finally, the court must next determine whether the settlement is within the range of possible approval by considering whether: (A) the class representative and class counsel have adequately represented the class; (B) the proposed settlement was negotiated at arm's-length; (C) the relief provided for the class is adequate, taking into account, (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposed settlement treats class members equitably relative to each other.

14

Fed. R. Civ. P. 23(e)(2). Each of these factors support preliminary approval.

### 1. The Class has been adequately represented.

First, the named plaintiff and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). This requirement is satisfied as already shown above. Plaintiff's interests in this case are aligned with those of the class she seeks to represent. Plaintiff and the other Settlement Class Members all share identical claims arising from a common course of conduct. To vindicate those claims, Plaintiff has vigorously prosecuted this action on behalf of the Settlement Class by retaining counsel, assisting his attorneys in investigating the Settlement Class's TCPA claims, reviewing and approving the complaint, answering discovery and producing documents, regularly conferring with his attorneys throughout the litigation and during mediation, and reviewing and approving the Settlement Agreement. *Appendix 3 – Troung Dec.* at ¶ 8-12 *and Appendix 2 – Sostrin Dec.* at ¶ 20.

Likewise, Plaintiff's counsel have extensive experience as class counsel in TCPA class actions and, drawing on this experience, were able to efficiently resolve the litigation through precise pleadings, targeted discovery, and two mediations where they vigorously presented the case for the class. *Id.* at ¶ 9-19, 21-53.

### 2. The Settlement resulted from arm's length negotiation.

Second, the settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). The settlement resulted from both an in-person, day-long mediation before an experienced mediator and former judge (Steven M. Gold (Ret.)), and then a second mediation before judge Gold where the Parties agreed on the principal terms of the Settlement. *See* Doc. 45. Once those terms were in place, the Parties spent another two months negotiating the finer details of the Agreement. *Ibid.*

The arms-length nature of the Parties' discussions is also borne out by the terms of the Agreement itself. The settlement is non-reversionary, provides significant cash payments to all

15

members of the Settlement Class without any need for a claim form, and is devoid of any provision that could indicate fraud or collusion such as a "clear sailing" or "kicker" clause related to attorney's fees or the incentive award. *See McAdams v. Robinson*, 26 F.4th 149, 162 (4th Cir. 2022)("[Clear sailing] agreements are troubling because they demonstrate that class counsel negotiated some aspect of their fee arrangement with the defendant, when counsel's ethical obligation is to the class.")(quoting Newberg on Class Actions § 13:9 (5th ed.)); *see also Haney v. Genworth Life Ins. Co.*, Civil Action No. 3:22cv55, 2023 U.S. Dist. LEXIS 21809, at *16 (E.D. Va. Feb. 8, 2023) ("In the absence of any evidence to the contrary, it is presumed that no fraud or collusion occurred.') (quoting *Gagliastre v. Capt. George's Seafood Restaurant, LP*, No. 2:17cv379, 2019 U.S. Dist. LEXIS 90468 (E.D. Va. May 29, 2019)).

### 3. The relief provided to the Settlement Class is more than adequate.

Third, the relief provided for the class is phenomenal. Fed. R. Civ. P. 23(e)(2)(C). As the essence of settlement is compromise, a settlement "need not represent a complete victory for Plaintiff and the Class Members to be approved by this Court." *Boger v. Citrix Sys., Inc.*, Civil Action No. 19-cv-01234-LKG, 2023 U.S. Dist. LEXIS 96379, at *28 n.7 (D. Md. June 1, 2023).

Here, Defendant has agreed to create a $4,100,000.00 non-reversionary Settlement Fund for a class of approximately 5,998 persons, who are expected to receive $440 each without any need to submit a claim form. This relief exceeds most other TCPA class actions settlements. Indeed, courts have granted preliminary and final approval of TCPA class action settlements that achieved much smaller recoveries. *See, id.* at *28 ("expected settlement payment for each Class Member [of] $44.14 . . . exceeds the typical value of claims in similar settlements and the likely statutory damages for TCPA claims.") (Collecting cases); see also *In re Capital One TCPA Litigation*, 12-cv-10064 (MDL No. 2416) (N.D. Ill. Feb. 12, 2015) (granting final approval where each class member who submitted claims would be awarded $39.66); *Steinfeld v. Discover Fin.*

*Svcs.* 12-cv-01118 (N.D. Cal.) (Final Approval of $46.98 to each claimant); *Kramer v. Autobytel,* No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) (approving $12.2 million settlement to benefit 47 million class members); *Malta v. Fed. Home Loan Mortg. Corp.,* No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 5, 2013) (preliminarily approving $17.1 million settlement to 5,887,508 class members; final approval granted at ECF No. 91); *Adams v. AllianceOne Receivables Mgmt. Inc.,* No. 08-cv-00248 (S.D. Cal. Sept. 28, 2012), ECF Nos. 116 and 137 (approving $9 million settlement to benefit 6,696,743 class members); *Palmer v. Sprint Nextel Corp.,* No. 09-cv-01211 (W.D. Wash. Oct. 21, 2011), ECF Nos. 84 and 91 (approving $5.5 million settlement to benefit 18.1 million class members).

As noted above, if this settlement was compared to the average TCPA class settlement where a claim process was required, the estimated recovery per claimant for a five percent claim rate would equal $8,776 and $4,388 for a ten percent claim rate, with the remaining class members getting nothing. Instead, here every class member will receive $440, which is a significant portion of their claim that provides only $500 per violation. Thus, in an apples to apples comparison, this settlement is a terrific result far exceeding many other TCPA settlements.

In sum, the relief provided by the proposed Settlement is more than adequate and exceeds the recoveries provided by other TCPA class settlements found to be fair, adequate and reasonable, making the Settlement here a great result for the Class. And, as shown below, the sub-factors set forth in Rule 23(e)(2)(C) further confirm the adequacy of the class relief.

### a. The risks of continued litigation weigh in favor of approval.

When evaluating the adequacy of class relief, a court should first compare the costs, risks, and delay of trial against the immediate benefits afforded by the proposed settlement. Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 amendment. This sub-factor weighs heavily in favor of approval because the proposed Settlement provides immediate relief to Settlement Class

17

Members while avoiding potentially years of costly, complex litigation, and appeals and the associated risk.

While Plaintiff remains confident in the strength of his claims, Defendant denied all of the material allegations while raising myriad legal and factual defenses that, if successful, could preclude any recovery for the Settlement Class. Doc. 19 (raising sixteen affirmative defenses).

Moreover, Plaintiff would also need to prevail at class certification, which was hotly contested, and would entail extensive motion practice on several issues with no guarantee of success. *Id.* at p. 9 (contesting class certification); Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 Amendment (directing courts to consider the likelihood of certification when evaluating this sub-factor). Though Plaintiff maintains this case is ideal for certification, success is certainly not guaranteed and Defendant would vigorously oppose.

Taking these realities into account and recognizing the risks involved in any litigation, the monetary relief available to each Settlement Class Member represents an excellent result. Instead of facing the uncertainty of a potential award in their favor years from now, the Settlement allows Plaintiff and Settlement Class Members to receive immediate and certain relief. *See, e*.g., *In re Capital One Consumer Data Sec. Breach Litig.*, No. 1:19-md-2915 (AJT/JFA), 2022 U.S. Dist. LEXIS 234943, at *33 (E.D. Va. Sep. 13, 2022) ("In contrast to the risk, cost, and delay posed by the pending motions and possible appeals and trial, the proposed Settlement provides certain, substantial, and immediate relief to the proposed Settlement Class.")

### b. The proposed method of distribution is effective.

The next sub-factor analyzes the whether the proposed method for distributing relief to the class is effective. Fed. R. Civ. P. 23(3)(2)(C)(ii). Effective distribution methods are those that "get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.).

Here, class members who do not opt-out of the settlement will automatically receive payment without any need to submit a claim form. *App. 1 - Agreement* at ¶ 34, 51-56. This proposed method of distribution is about as simple and expeditious as a settlement can get and is equitable to the class members.

### c. The proposed attorney fee award and timing of payment

The final relevant sub-factor[3] analyzes the adequacy of the class relief in light of "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii).

Here, the Agreement does not guarantee any set fee, nor does it provide that Defendant has agreed to any set fee amount. Instead, class counsel anticipates asking the Court to approve a fee award of one third of the Settlement Fund - an amount courts within the Fourth Circuit routinely award in common fund class actions. *See, e.g.*, *Rodriguez*, 2024 U.S. Dist. LEXIS 22802 at *3 ("Cases in the Fourth Circuit routinely find that attorneys' fees representing thirty-three and one-third percent of the common fund are reasonable."); *Boger*, 2023 U.S. Dist. LEXIS 96379 at *34 (awarding one-third of the settlement fund in a TCPA case); *Krakauer,* 2019 U.S. Dist. LEXIS 220380 at * 2 (awarding one-third of the common fund in a TCPA case).

Class Counsel will file their fee application on the same date notice is sent to the class, and a copy will be posted on the Settlement Website allowing Class Members to review or object. Only after the expiration of the deadline to appeal the Court's final approval order would any fee payment be made. *App. 1 – Agreement* at ¶ at ¶ 54. Considering all these factors, the relief provided to the class is more than adequate.

---

[3] The fourth sub-factor directs courts to consider any side deals or separate agreements reached by the parties in connection with the settlement agreement. *See* Fed. R. Civ. P. 23(e)(2)(c)(iv). Because the Parties have reached no such agreement (Appendix B – Sostrin Dec. at ¶ 14) this sub-factor does not factor into the analysis.

19

### 4. The proposed Settlement treats Settlement Class Members equitably.

Fourth, the proposed settlement treats all class members equitably. Fed. R. Civ. P. 23(e)(2)(D). Here, each Settlement Class Member has identical TCPA claims and is entitled to a pro rata share of the fund. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (where class members are similarly situated with similar claims, equitable treatment is "assured by straightforward pro rata distribution of the limited fund"). No Settlement Class Member is treated differently, and each can object or opt out in the same fashion. Moreover, the automatic payment without the need for a claim form ensures that all class members will receive payment rather than the few who would take the time to submit claims. Because there is no disparate treatment between members, the Settlement merits approval.

### d. The Notice Plan Satisfies Rule 23(c)(2)(B)

Finally, as the proposed settlement would provide monetary relief and the settlement class would be certified pursuant to Rule 23(b)(3), the Court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Further, the notice "must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."

*Id.*

The proposed forms of Notice, attached as Exhibits 2 and 4 to the Agreement set forth this information and are more than adequate. The Notice Plan provides that direct, individual notice

("Mail Notice") will be mailed by the Administrator to each Settlement Class Member at the address the Administrator obtains via reverse look-up within sixty (60) days of the entry of Preliminary Approval Order. *App. 1 – Agreement* at ¶ *Id.* at ¶ 15. Further, the Settlement Administrator will re-mail once any Notice returned as undeliverable and for which an alternative address can be located, and undertake reasonable means to locate alternative addresses for returned notices. *Ibid.*

The Administrator will also establish and maintain a website at www.truisttcpasettlement.com, wherein the email notice will be posted, along with instructions for selecting preferred payment methods, updating their address, opting out or objecting, as well as copies of the public pleadings, the Settlement Agreement, and any petitions for payment of attorneys' fees, expenses, and incentive awards. *Ibid.* Accordingly, the proposed Notice Plan passes muster and should be approved.

WHEREFORE, the Court should enter the preliminary approval order attached hereto as *Appendix 4*, which sets forth the following schedule:

| | |
|---|---|
| **_____, 2025** [60 days after the date of this Order] | Deadline for notice to be provided in accordance with the Agreement and this Order (Notice Deadline) |
| **_____, 2025** [60 days after the date of this Order] | Deadline for filing of Plaintiff's Motion for Attorneys' Fees and Costs and Service Award |
| **_____, 2025** [60 days after the Notice Deadline] | Deadline to file objections or submit requests for exclusion (Opt-Out/Objection Deadline) |
| **_____, 2025** [28 days after the Opt-Out/Objection Deadline] | Deadline for Plaintiff to file the following: (1) List of persons who made timely and proper requests for exclusion (under seal); (2) A Response to any objections; (3) Proof of Class Notice; and (4) Motion and memorandum in support of final approval, including responses to any objections. |
| **_____, 2025 at _____ _.m.** | Final Approval Hearing |

21

| [No earlier than 116 days from the entry of this Order] | |
| --- | --- |

Respectfully submitted,

/s/ Timothy J. Sostrin
Timothy J. Sostrin (pro hac vice)
Keith J. Keogh (pro hac vice)
KEOGH LAW, LTD.
55 W. Monroe St. Suite 3390
Chicago, IL 60603
tsostrin@KeoghLaw.com
keith@keoghlaw.com

Karl S. Gwaltney
Maginnis Law, PLLC
N.C. State Bar No. 45118
7706 Six Forks Road, Suite 101
Raleigh, North Carolina 27615
Telephone: 919-526-0450
Fax: 919-882-8763
kgwaltney@maginnishoward.com

*Counsel for Plaintiff*