# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division

| | | |
|---|---|---|
| KEVIN TRUONG, individually and on behalf of a class of all persons and entities similarly situated; | : : : : | Case No. 3:23-cv-00079-MOC-DCK |
| Plaintiff, | : : | |
| v. | : : | |
| TRUIST BANK, | : : | |
| Defendant. | : | |

## MOTION FOR FINAL APPROVAL

Pursuant to Fed. R. Civ. P. 23(e), Plaintiff Kevin Truong ("Truong") moves for final approval of a class wide settlement agreement with Defendant Truist Bank ("Truist") that would resolve this litigation on behalf of a settlement class of similarly situated individuals. In support hereof, Plaintiff states:

## I. INTRODUCTION

On May 1, 2025, this Court preliminarily approved a non-reversionary class settlement agreement for $4,100,00, which equals $683 gross for each of the 5,998 class members, that resolves their claims under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 without the need to submit a claim form. *Doc. 52 – Preliminary Approval Order*; *see also Appendix 1 – Settlement Agreement*. In doing so, the Court preliminarily found the settlement to be fair, reasonable, and adequate, and ordered notice of the settlement to the class. *Doc. 52* at 2, ¶ 4.

The Settlement Administrator (Verita) disseminated direct notice to 5,206 class members for whom an address could be found (87% of the class) and published a settlement website that received more than 23,000 visits. *Appendix 2 – Geraci Decl.* at ¶ 10, 17. That website posted all

documents related to the settlement, including the petition for attorneys' fees and an incentive award. *Id.*; see also https://tbtcpasettlement.com/case-documents.aspx. Both the class notice and the website explicitly informed the class members of the exact amount of fees sought, both as a percentage of the fund and the exact dollar amount, as well as the amount of the incentive award sought. *See App. 2* at Ex. D (Class notice).

At the conclusion of this notice process, no class member has opted out of the settlement and no class member has objected to any portion of the Settlement[1] or the motion for incentive award and attorney fees that was posted to the settlement website the same day notice was sent to the class. *App. 2* at ¶ 19-20. This "lack of opposition to . . . strongly supports a finding of adequacy, for 'the attitude of the members of the Class, as expressed directly or by failure to object, after notice to the settlement is a proper consideration for the trial court.'" *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 667-68 (E.D. Va. 2001) (quoting *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975)).

If finally approved, each class member identified in the notice process will receive approximately $511[2] without needing to submit a claim form. This is an outstanding result considering that the TCPA provides statutory damages of $500 per violation (or $1500 for willful violations) for the claims at issue in this case. The proposed settlement is more than fair

---

[1] A non-class member named Charles P████████, sent a letter to the claims administrator. (*See Appendix 2 – Geraci Declaration* at Exhibit F). He not a class member and has no standing to object. He also did not file his "objection" with the Court as required by the preliminary approval order. *Doc. 52* at ¶ 15 Further, his objection is incoherent as addressed further below.

[2] The costs of notice and administration are $58,345. *App. 2* at ¶ 21. Plaintiff's counsel have requested one-third of the fund as a reasonable fee ($1,336,666); out of pocket expenses of $16,631; and incentive award of $25,000. *Doc. 54 – Petition for Attorney's Fees and Incentive Award*. Assuming these payments are approved for purposes of calculating an estimate, the net balance will be approximately $2,663,358, which is approximately $511 to each of the 5,206 class members identified in the notice process.

2

and reasonable, and satisfies Rule 23's requirements for certification.

As demonstrated below, the significant relief provided by the Settlement, along with its equitable and effective method of distribution, is a great result, particularly in view of the risks and delays involved in litigating the substantive merits of these claims.

For the foregoing reasons, and as more fully detailed below, the Settlement meets the standards for final approval and should therefore be approved.

## II.  RELEVANT BACKGROUND

On February 10, 2023 Truong filed a class action complaint alleging Truist violated the Telephone Consumer Protection Act, 47 U.S.C. § 227(b) by placing prerecorded calls to the cellular telephone numbers of non-account holders without prior express consent. *Doc. 1.*

The TCPA forbids prerecorded calls to cellular telephone numbers unless made with the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A); *Am. Ass'n of Political Consultants, Inc. v. FCC*, 923 F.3d 159, 162 (4th Cir. 2019).

In his complaint, Truong proposed certification of a class of persons who also received prerecorded calls on their cellular telephone numbers concerning an unrelated Truist account. *Id.* at ¶ 28.

On April 5, 2023, Defendant filed its answer denying Plaintiff's allegations, denying that class certification was appropriate, and asserting sixteen affirmative defenses. *Doc. 19.*  On May 2, 2023, the Court entered a Pretrial Order and Case Management Plan governing discovery and other case management deadlines. *Doc. 24.*

The parties proceeded to exchange extensive discovery concerning Plaintiff's individual claims and Defendant's records of calls to potential class members, and presented discovery disputes with the court (*see Doc. 38 – denying motion for protective order*).

After these proceedings, the Parties participated in a private mediation with the

3

Honorable Steven M. Gold (Ret.) of JAMS on October 7, 2024 in person in New York. The parties exchanged mediation briefs in advance of the mediation, and vigorously defended their claims and asserted defenses during the mediation. However, the Parties were unable to reach a settlement.

Following the mediation, Defendant provided additional information concerning Defendant's records of calls to potential class members and, on January 17, 2025, the Parties participated in a second mediation with Judge Gold. During this second mediation, the parties reached an agreement in principle to resolve the action on a class-wide basis, which the Parties formalized into the agreement set forth herein over the following weeks. *See Doc. 45.*

## III. THE PROPOSED SETTLEMENT

The Settlement Agreement is attached hereto as *Appendix 1*. The following summarizes the Agreement's terms:

### a. The Settlement Class.

The Settlement Class is defined as follows:

> The subscribers or regular users of the 5,998 telephone numbers assigned to cellular telephone service in the United States to which Truist placed a prerecorded telephone call concerning an unrelated account between February 10, 2019, and August 31, 2022.

*App. 1* at ¶ 28.

### b. Monetary relief for Settlement Class Members.

The Agreement requires Defendant to pay $4,100,000 to a non-reversionary common fund (*id.* at ¶ 51) from which Settlement Class Members will be paid a pro rata share of the fund without the need to submit a claim form after payment of notice and administration costs, any attorneys' fees and expenses approved by the court, and any incentive award to the class representative approved by the Court. *Id.* at ¶ 34, 51-56. No amount of the Settlement Fund will revert to

4

Defendant. *Id.* at ¶ 34, 68-69.

As noted above, Plaintiff's counsel estimate payments of approximately $511 to each class member identified in the notice process, assuming the Court approves the above referenced payments from the Settlement Fund.[3] Payments will be made by check. *Id.* at ¶ 68. If, after expiration of those payments, there remains money in the Settlement Fund sufficient to pay at least $10.00 to each Settlement Class Member who cashed their initial Settlement Award check, that remaining money will be distributed on a pro rata basis to those Settlement Class Members in a Subsequent Distribution. *Id.* at ¶ 69.

If there is not enough money for a Subsequent Distribution, or if any checks or deposits from the Subsequent Distribution remain uncashed after the stale date, the remaining funds shall be distributed to a *cy pres*. *Id.*. The Settlement Agreement calls for the Court to decide upon the appropriate *cy pres*, as the Parties have been unable to agree on the specific recipient. *Id.*.

"In the context of class action settlements, a court may employ the cy pres doctrine to 'put the unclaimed fund to its next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class.'" *Nachshin v. AOL, Ltd. Liab. Co.*, 663 F.3d 1034, 1038 (9th Cir. 2011) "(quoting *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007)). Thus, a "cy pres distribution must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members." *Id.* at 1039. Thus, in a TCPA action "the case law . . . requires *cy pres* recipients to promote the objectives of the TCPA and benefit the interests of the class members." *Krakauer v. Dish Network, LLC*, No. 1:14-CV-333, 2020 U.S. Dist. LEXIS

---

[3] The costs of notice and administration are $58,345. *App. 2* at ¶ 21. Plaintiff's counsel have requested one-third of the fund as a reasonable fee ($1,336,666); out of pocket expenses of $16,631; and incentive award of $25,000. *Doc. 54 – Petition for Attorney's Fees and Incentive Award*. Assuming these payments are approved, the net balance will be approximately $2,663,358, which is approximately $511 to each of the 5,206 class members identified in the notice process.

5

199112, at *19 (M.D.N.C. Oct. 27, 2020)

In this case, subject to Court approval, Plaintiff suggests any funds remaining after a second distribution be sent to the National Consumer Law Center ("NCLC") as *cy pres* and *earmarked* for working to safeguard the protections of the TCPA. One would be hard pressed to find another organization more closely aligned with the class's interests than NCLC. NCLC has fought to preserve the TCPA's protections for years before Congress, before the Federal Communications Commission ("FCC"), and before the courts as an *amicus curiae*, and is a leading consumer advocacy organization on TCPA matters. Since 2014, it has commented on almost every major proceeding, and many minor proceedings, before the FCC concerning the TCPA. *See Robocalls & Telemarketing*, National Consumer Law Center, https://www.nclc.org/issue/robocalls-texts/ (last visited Apr. 10, 2025). NCLC staff meet regularly with staff of the former and current FCC Chairman's office as well as with staff of other Commissioners' office and staff of the Consumer and Governmental Affairs Bureau. *Id.* NCLC staff have also testified before both the House of Representatives and the Senate concerning the TCPA. *Id.* In addition, NCLC has submitted amicus briefs to the Supreme Court and Federal Courts of Appeal in numerous TCPA cases. *Id.* Thus, NCLC's work reasonably approximates the interests pursued by the class. Given NCLC's proven record of TCPA advocacy, numerous courts have approved NCLC as a *cy pres* recipient in TCPA class actions, often over defendant's objection. *See e.g.*, *Braver v. Northstar*, 5:17-cv-00383-F (W.D. Okla. 2020), ECF No. 273; *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 205-06 (N.D. Ill. 2018); *Keim v. ADF Midatlantic, LLC*, 2020 U.S. Dist. LEXIS 49933, *11 (S.D. Fla. 2020); *Lee v. Global Tel*Link Corp.*, 2018 U.S. Dist. LEXIS 163410, *23-25 (S.D. Cal. 2018); *Martinez v. Medicredit, Inc.*, 2018 U.S. Dist. LEXIS 81818, *4-5 (E.D. Mo. 2018); *Jonsson v. USCB, Inc.*, 2015 U.S. Dist. LEXIS 69934, *30 (C.D. Cal. 2015); *Willett, et al. v. Redflex Traffic Systems, Inc.*, et al., Case No. 13-cv-01241-JCH-RHS, Doc. 269 (D.N.M. Oct. 24, 2016); *see also Legg v. AEO*,

14-cv-02440-VEC (S.D.N.Y. 2017) (TCPA) (approving NCLC for TCPA class case); *In re Convergent Outsourcing, Inc. Telephone Consumer Protection Act Litigation*, Master Docket No. 3:13-cv-1866-AWT (D. Conn. Nov. 10, 2016) (Same).

NCLC was approved as an appropriate *cy pres* in a similar TCPA case in the Fourth Circuit. *See Krakauer v. Dish Network LLC*, 2023 U.S. Dist. LEXIS 182479, *(M.D.N.C. Oct. 11, 2023) (approving cy pres distribution to NCLC) .

While Plaintiff does not doubt Truist's suggested organization (Legal Aid of North Carolina (LANC)) does important work, it is Plaintiff's position that it has no connection to the claims at issue and therefore is, respectfully, not an appropriate cy pres *in this case. See e.g.*, https://legalaidnc.org/get-help (last visited April 10, 2025). Accordingly, LANC does not offer the next best use of unclaimed funds in this case. For example, the Seventh Circuit dealt with this exact issue in a TCPA case and reversed a *cy pres* award to a similar legal aid organization[4] because, while "a worthy organization," it "does not directly or indirectly benefit . . . the victims of Turza's junk faxes." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 689 (7th Cir. 2013).

In support of its suggestion of LANC as the *cy pres* recipient, Truist contends as follows: LANC is a "nonprofit law firm that provides free legal services in civil matters to low-income people in order to ensure equal access to justice and to remove legal barriers to economic opportunity." LANC, *About Us*, https://legalaidnc.org/about-us/ (last visited Apr. 1, 2025). With that mission in mind, LANC represents those in need in an array of consumer-protection cases, from debt collection actions to foreclosures, repossessions, and more. LANC, *Our Services*,

---

[4]    Class Counsel has a long history of supporting local bar organizations and has served on *cy pres* committees for them as well as directed *cy pres* to them when, unlike here, the claims are closely related to the work of the bar organization.

https://legalaidnc.org/our-services/ (last visited Apr. 1, 2025). Courts across the country have found legal aid nonprofits like LANC as appropriate *cy pres* recipients in consumer-protection matters, including TCPA class action litigation. *See, e.g.*, *Krakauer v. Dish Network LLC*, No. 14-333, 2023 WL 6626112, at *4 (M.D.N.C. Oct. 11, 2023) (approving National Legal Aid and Defender Association as a *cy pres* recipient in TCPA class settlement); *Michel v. WM Healthcare Sols., Inc.*, No. 10-638, 2014 WL 497031, at *26 (S.D. Ohio Feb. 7, 2014) (approving Legal Aid Society of Southwest Ohio as the *cy pres* recipient in TCPA class settlement); *Gutierrez v. Barclays Grp.*, No. 10-1012, 2012 WL 12541830, at *2 (S.D. Cal. Mar. 12, 2012) (approving Legal Aid Society of San Diego as the *cy pres* recipient in TCPA class settlement).

### c. Settlement Class release.

In exchange for the benefits allowed under the Settlement Agreement, Settlement Class Members will provide a release tailored to the specific practice at issue in this case. Specifically, they will release claims regarding "communications allegedly occurring without consent by Defendant." *Id.* at ¶ 70.

### d. Class Representative Incentive Award.

The Agreement provides Plaintiff may petition the Court for an incentive award. *Id.* at ¶ 55. As noted above, there is no clear sailing provision as to this request. *Id.*. The incentive award shall be paid out of the Settlement Fund and is subject to this Court's approval. *Id.*. Neither Court approval nor the amount of the incentive award is a condition of the Settlement. *Id.*. Given Plaintiff's extensive efforts prosecuting this action including travel to New York from Texas for the mediation and foregoing sizable individual offers for the benefit of the Settlement Class, Plaintiff requested an incentive award of $25,000.00. *Doc. 54 – Petition for Attorney's Fees and Incentive Award* at 20-22.

This incentive award is in line with other TCPA incentive awards that obtained substantial

relief for each class member. *See Hageman v. AT&T Mobility LLC*, No. CV 13-50-BLG-RWA, 2015 U.S. Dist. LEXIS 25595, at *12 (D. Mont. Feb. 11, 2015) (approving $20,000 incentive award in TCPA class settlement); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 incentive award); *Benzion v. Vivint, Inc.*, No. 12-61826-CIV-ZLOCH, 2015 U.S. Dist. LEXIS 179532, at *8-9 (S.D. Fla. Feb. 23, 2015) (awarding $20,000 incentive award in TCPA settlement); *Heekin v. Anthem, Inc.*, No. 1:05-cv-01908-TWP-TAB, 2012 U.S. Dist. LEXIS 165464, at *4-5 (S.D. Ind. Nov. 20, 2012) (approving $25,000 incentive award over objection); *Will v. Gen. Dynamics Corp.*, No. 06-698-GPM, 2010 U.S. Dist. LEXIS 123349, at *12-13 (S.D. Ill. Nov. 22, 2010) (awarding $25,000 each to three named plaintiffs); *Jones*, 2015 U.S. Dist. LEXIS 137209, at *5 ($20,000 incentive award from a $1 million common fund); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-CV-4462, 2015 U.S. Dist. LEXIS 35421, at *17-20 (N.D. Ill. Mar. 23, 2015) (collecting cases and approving a $25,000 service award to TCPA class representative); *Martin v. Dun & Bradstreet, Inc.*, No. 1:12-cv-215, 2014 U.S. Dist. LEXIS 184193, at *8-9 (N.D. Ill. Jan. 16, 2014) (approving a $20,000 service award to a TCPA class representative).

Verita posted this request to the settlement website on the same day that class notice was sent (July 10, 2025). *App. 2* at ¶ 17; see also https://tbtcpasettlement.com/case-documents.aspx. Moreover, the class notice explicitly informed the class members of the exact amount of the incentive award sought. See *App. 2* at Ex. D. No class member objected to the request. *App. 2* at ¶ 20.

### e. Attorneys' fees and costs.

The Agreement also provides Plaintiff's counsel may file an application for an award of attorneys' fees and costs. *App. 1* at ¶ 54. As with the incentive award, the Agreement does not contain a clear sailing agreement as to fees or costs. *Id.*. Plaintiff filed the motion for an award of

9

attorneys' fees and costs on the day class notice was sent (July 10, 2025), seeking one-third of the Settlement Fund, which is $1,336,666, plus $16,631 in out of pocket expenses.[5] *Doc. 54* at 2. As addressed in that motion, courts in this district commonly award one-third of the fund, plus reasonable expenses in common fund class settlements. *See, e.g.*, *Rodriguez v. Riverstone Cmtys.*, LLC, 2024 U.S. Dist. LEXIS 22802, *3 (E.D. N.C. Feb. 2, 2024) ("Cases in the Fourth Circuit routinely find that attorneys' fees representing thirty-three and one-third percent of the common fund are reasonable."); *Boger v. Citrix Sys., Inc.*, Civil Action No. 19-cv-01234-LKG, 2023 U.S. Dist. LEXIS 96379, at *34 (D. Md. June 1, 2023) (awarding one-third of the settlement fund in a TCPA case); *Krakauer v. Dish Network, L.L.C.,* No. 1:14-CV-333, 2019 U.S. Dist. LEXIS 22038, * 2 (M.D.N.C. Dec. 23, 2019) (awarding one-third of the common fund in a TCPA case).

Verita posted the fee petition on the settlement website for class members to review on the same day it disseminated notice to the class. *App. 2* at ¶ 17; *see also* https://tbtcpasettlement.com/case-documents.aspx. Further, the Class Notice informed the class members of the exact amount of fees sought, both as a percentage of the fund and the exact dollar amount. *App. 2* at Ex. D. No class member objected to the request. *App. 2* at ¶ 20.

## IV. ARGUMENT

The claims of a class may be settled only with court approval. Fed. R. Civ. P. 23(e). While approval is within the Court's discretion, "it has long been clear that the law favors settlement.'" *Binotti v. Duke Univ.*, No. 1:20-CV-470, 2021 U.S. Dist. LEXIS 225003, at *9 (M.D.N.C. Aug. 30, 2021) (quoting *United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992)). "This is particularly true in class actions." *Id.* (citing *Reed v. Big Water Resort, LLC*, No. 2:14-cv-101583-DCN, 2016 U.S. Dist. LEXIS 187745 * 14 (D.S.C. May 26, 2016) (noting the "strong

---

[5]  Class Counsel excluded the expense of flights and hotels for final approval from this amount.

10

judicial policy in favor of settlements, particularly in the class action context.")）

At the final approval stage, Rule 23(e)(2) requires the court to consider whether the settlement is "fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

### a. The Class has been adequately represented.

First, the named plaintiff and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). In order to be an adequate representative, the named plaintiff must "be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625-26 (1997). Plaintiff meets this standard. Having received prerecorded calls concerning somebody else's Truist accounts, Plaintiff falls within the class definition and possesses the same injury and interests as every other class member. To vindicate those claims, Plaintiff has vigorously prosecuted this action on behalf of the Settlement Class and went above and beyond the normal duties of a class representative. *Doc. 54-2 - Sostrin Decl. in Support of Fee Motion* at ¶ 20-21. He consistently put the interests of the class above his own personal interests, both during the back and forth of settlement negotiations, and throughout the litigation. *Id.*

Plaintiff assisted counsel in settlement negotiations with Truist on behalf of the class, took time off work and traveled from Texas to New York for the mediation of this matter. *Doc. 54-3 -*

11

*Truong Decl. in Support of Fee Motion* at ¶ 12. In addition, Plaintiff provided invaluable service to the class by thoroughly researching his legal claims and searching for attorneys experienced in bringing TCPA actions, reviewing and providing input on the complaint and other pleadings, assisting counsel with discovery, searching for and providing numerous documents for production in discovery. *Id.* at ¶ 8-10. As part of that discovery, Truist subpoenaed Plaintiff's former employer for his employment records, and also subpoenaed his telephone service providers for records of his telephone communications. *Id.* at ¶ 11. Plaintiff was willing to proceed with this action despite these requests because he believed in his claims and the claims of the class. *Id.*; *Sostrin Decl.* at ¶ 21.

Likewise, Class counsel adequately represented the class. Class Counsel has significant experience in complex civil litigation, including class actions under the TCPA. They have been appointed as class counsel in dozens of actions arising under the TCPA and various other consumer protection statutes. *Sostrin Decl.* at ¶ 5, 27-59. They have built a reputation for effectively litigating and resolving cases that involve intricate legal issues and substantial risks, as reflected in this matter. Drawing on this experience in this case, Class Counsel were able to efficiently resolve the litigation through precise pleadings, targeted discovery, and two mediations where they vigorously presented the case for the class. *Id.* at ¶ 6-19.

### b. The Settlement resulted from arm's length negotiation.

Second, the settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). The settlement resulted from both an in-person, day-long mediation before an experienced mediator and former judge (Steven M. Gold (Ret.)), and then a second mediation before judge Gold resulting in an agreement on the principal terms of the Settlement. *See Doc. 45*. The Parties then spent another two months negotiating the finer details of the Agreement. *Id.*.

The arms-length nature of the Parties' discussions is also borne out by the terms of the

12

Agreement itself. The settlement is non-reversionary, provides significant cash payments to all members of the Settlement Class without any need for a claim form, and is devoid of any provision that could indicate fraud or collusion such as a "clear sailing" or "kicker" clause related to attorney's fees or the incentive award. *See McAdams v. Robinson*, 26 F.4th 149, 162 (4th Cir. 2022)("[Clear sailing] agreements are troubling because they demonstrate that class counsel negotiated some aspect of their fee arrangement with the defendant, when counsel's ethical obligation is to the class.")(quoting Newberg on Class Actions § 13:9 (5th ed.)); *see also Haney v. Genworth Life Ins. Co.*, Civil Action No. 3:22cv55, 2023 U.S. Dist. LEXIS 21809, at *16 (E.D. Va. Feb. 8, 2023) ("In the absence of any evidence to the contrary, it is presumed that no fraud or collusion occurred.') (quoting *Gagliastre v. Capt. George's Seafood Restaurant, LP*, No. 2:17cv379, 2019 U.S. Dist. LEXIS 90468 (E.D. Va. May 29, 2019)).

### c. The relief provided to the Settlement Class is more than adequate.

Third, the relief provided for the class is an outstanding result in this type of action. Fed. R. Civ. P. 23(e)(2)(C). As the essence of settlement is compromise, a settlement "need not represent a complete victory for Plaintiff and the Class Members to be approved by this Court." *Boger v. Citrix Sys., Inc.*, Civil Action No. 19-cv-01234-LKG, 2023 U.S. Dist. LEXIS 96379, at *28 n.7 (D. Md. June 1, 2023).

Here, the total settlement payment of $4,100,000 for 5,998 class members equals a gross $683 per person and thus exceeds the base level statutory damages provided for by the statute. This recovery more than favorably compares to the relief obtained in the vast majority of TCPA settlements. *See, e.g., Connor v. JPMorgan Chase Bank, N.A.*, No. 10 CV 01284 GPC BGS (S.D. Cal. Feb. 5, 2015), ECF No. 160 (Final Judgment and Order of Dismissal entering final approval of settlement valued at approximately $4.50 per person); *Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) (approving $12.2 million settlement to

13

benefit 47 million class members, or $.26 per person); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 5, 2013) (preliminarily approving $17.1 million settlement to 5,887,508 class members, or $2.90 per person; final approval granted at ECF No. 91); *Adams v. AllianceOne Receivables Mgmt. Inc.*, No. 08-cv-00248 (S.D. Cal. Sept. 28, 2012), ECF Nos. 116 and 137 (approving $9 million settlement to benefit 6,696,743 class members), or $1.34 per person); *Palmer v. Sprint Nextel Corp.*, No. 09-cv-01211 (W.D. Wash. Oct. 21, 2011), ECF Nos. 84 and 91 (approving $5.5 million settlement to benefit 18.1 million class members, or $.30 per person).

Moreover, the cash payments class members will actually receive (estimated at $511 in this case) is much higher than those provided in most TCPA settlements. *See e.g., Boger*,, 2023 U.S. Dist. LEXIS 96379, at *28 n.7 ("expected settlement payment for each Class Member [of] $44.14 . . . exceeds the typical value of claims in similar settlements and the likely statutory damages for TCPA claims."); *In re Capital One TCPA Litigation*, 12-cv-10064 (MDL No. 2416) (N.D. Ill. Feb. 12, 2015) (granting final approval where each class member who submitted claims would be awarded $39.66); *Wright v. Nationstar Mortg. LLC*, 2016 U.S. Dist. LEXIS 115729, *28 (N.D. Ill. 2016) (finally approving "$45.00 recovery per claimant); *Garret, et al. v. Sharps Compliance, Inc.*, No. 1:10-cv-04030, Dkt. No. 65 (N.D. Ill. Feb. 23, 2012) (claimants received between $27.42 and $28.51); *Gehrich v. Chase Bank U.S.A, N.A.*, 2016 U.S. Dist. LEXIS 26184 (N.D. Ill 2016) (final approval where "the actual recovery per claimant is approximately $52.50"); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493–94 (N.D. Ill. 2015) (finding that thirty dollars per claimant is "'within the range of recoveries' in TCPA class actions"); *Charvat v. Valente*, 2019 WL 5576932, at *6 (N.D. Ill. Oct. 28, 2019) ("While the average consumer payout of $22.17 is not anywhere the statutory maximum, it is also not out of line with other approved TCPA class action settlements."); *Steinfeld v. Discover Fin. Svcs.* 12-cv-01118 (N.D. Cal.) (Final Approval of

14

$46.98 to each claimant); *Markos v. Wells Fargo Bank, N.A.*, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action—far less than the anticipated recovery here—is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter"); *Rose v. Bank of Am. Corp.*, 2014 WL 4273358, at *5 & 10 (N.D. Cal. Aug. 29, 2014) (approving $20-40 per claimant).

Finally as noted above, the $511 payment here was made available without the need for a claim form. If a claim form was required like in most of the above cases, only 5 to 10 percent of the class would likely claim in, and the payout would result in a $3,000 to $6,000 windfall to a small portion of the class. Instead, each class member that can be reached will receive significant monetary relief. Thus, the relief provided by the proposed Settlement is more than adequate. Moreover, as shown below, the sub-factors set forth in Rule 23(e)(2)(C) further confirm the adequacy of the class relief.

### 1. The risks of continued litigation weigh in favor of approval.

When evaluating the adequacy of class relief, a court should first compare the costs, risks, and delay of trial against the immediate benefits afforded by the proposed settlement. Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 amendment. This sub-factor weighs heavily in favor of approval because the proposed Settlement provides immediate relief to Settlement Class Members while avoiding potentially years of costly, complex litigation, and appeals and the associated risk.

Although class counsel remain confident in the claims, TCPA cases pose unique challenges that make them especially risky. Indeed, after reviewing expert testimony, one court found that "the average TCPA case carried a 43% chance of success." *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 806 (N.D. Ill. 2015). Relevant here, Defendant raised several defenses that posed a real risk to success on both the merits and class certification. For instance,

Defendant raised an affirmative defense that many class members consented to receive the calls. [Dkt. 19 at 7 (fifth defense)]. While the statute requires "prior express consent" for prerecorded calls, the FCC has determined that "persons who knowingly release their phone numbers have in effect" consented to receive such calls." 1992 FCC Order, 7 FCC Rcd. at 8769, ¶ 31. Although the court is no longer bound by the FCC's interpretation[6], there is a real risk the court might find persons who released their phone numbers to the defendant had expressly consented to receive the calls and therefore lacked viable claims.

Similarly, Defendant contended this consent issue made class certification improper, and this posed real risk to a successful outcome here as well. *See* Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 Amendment (directing courts to consider the likelihood of certification when evaluating this sub-factor). Indeed, "some courts have refused to certify TCPA "wrong number" classes because the issue of consent can require an individualized inquiry which predominates over the common questions." *Stark v. Blue Cross & Blue Shield of N.C.*, No. 1:23-CV-22, 2025 U.S. Dist. LEXIS 29654, at *13 (M.D.N.C. Feb. 18, 2025) (citing *Davis v. Cap. One, N.A.*, No. 22-CV-903, 2023 U.S. Dist. LEXIS 189255, 2023 WL 6964051, at *15 (E.D. Va. Oct. 20, 2023) (collecting cases); *see also Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 WL 4627386, at *1 (N.D. Ill. Sept. 27, 2018) (denying class certification in TCPA case after nearly five years of hard-fought discovery and litigation).

Taking these realities into account and recognizing the risks involved in any litigation, the monetary relief available to each Settlement Class Member represents an excellent result. Instead of facing the uncertainty of a potential award in their favor years from now, the Settlement allows

---

[6] *See McLaughlin Chiropractic Assocs. v. McKesson Corp.*, No. 23-1226, 2025 U.S. LEXIS 2385 (June 20, 2025) (TCPA case holding courts are no longer precluded from questioning FCC orders.) This change in law illustrates another risk in litigating this matter.

16

Plaintiff and Settlement Class Members to receive immediate and certain relief. *See, e.*g., *In re Capital One Consumer Data Sec. Breach Litig.*, No. 1:19-md-2915 (AJT/JFA), 2022 U.S. Dist. LEXIS 234943, at *33 (E.D. Va. Sep. 13, 2022) ("In contrast to the risk, cost, and delay posed by the pending motions and possible appeals and trial, the proposed Settlement provides certain, substantial, and immediate relief to the proposed Settlement Class.")

### 2. The proposed method of distribution is effective.

The next sub-factor analyzes the whether the proposed method for distributing relief to the class is effective. Fed. R. Civ. P. 23(3)(2)(C)(ii). Effective distribution methods are those that "get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.).

Here, class members will automatically receive payment without any need to submit a claim form. *App. 1 – Settlement Agreement* at ¶ 34, 51-56.   This proposed method of distribution is about as simple and expeditious as a settlement can get and is equitable to the class members.

### 3. The proposed attorney fee award and timing of payment

The final relevant sub-factor[7] the adequacy of the class relief in light of "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii).

Here, the Agreement does not guarantee any set fee, nor does it provide that Defendant has agreed to any set fee amount. Instead, class counsel petitioned the court for an award of attorneys' fees on the same day that class notice was sent. *Doc. 54* at 2. Verita posted the fee petition on the settlement website for class members to review on the same day it disseminated notice to the class. *App. 2* at ¶ 17; see also https://tbtcpasettlement.com/case-documents.aspx.

---

[7]   The fourth sub-factor directs courts to consider any side deals or separate agreements reached by the parties in connection with the settlement agreement. *See* Fed. R. Civ. P. 23(e)(2)(c)(iv). Because the Parties have reached no such agreement (*Sostrin Decl.* at ¶ 14) this sub-factor does not factor into the analysis.

17

Further, the Class Notice informed the class members of the exact amount of fees sought, both as a percentage of the fund and the exact dollar amount. *App. 2* at Ex. D. Being fully and promptly informed of the fee sought, no class member has objected to the request for fees. *App. 2* at ¶ 20.

Beyond the lack of any opposition to the requested fee from the class, the reasonableness of the fee is well supported by awards in in similar cases. As noted above and elaborated in the fee motion, Courts in this circuit commonly award one-third of the common fund, plus reasonable expenses in common fund class settlements. *See, e.g., Rodriguez v. Riverstone Cmtys.*, LLC, 2024 U.S. Dist. LEXIS 22802, *3 (E.D. N.C. Feb. 2, 2024) ("Cases in the Fourth Circuit routinely find that attorneys' fees representing thirty-three and one-third percent of the common fund are reasonable."); *Boger v. Citrix Sys., Inc.*, Civil Action No. 19-cv-01234-LKG, 2023 U.S. Dist. LEXIS 96379, at *34 (D. Md. June 1, 2023) (awarding one-third of the settlement fund in a TCPA case); *Krakauer v. Dish Network, L.L.C.,* No. 1:14-CV-333, 2019 U.S. Dist. LEXIS 22038, * 2 (M.D.N.C. Dec. 23, 2019) (awarding one-third of the common fund in a TCPA case).

This holds true for TCPA class actions in this circuit, which also commonly result in one-third awards as well. *See e.g., Boger*, 2023 U.S. Dist. LEXIS 96379, at *34 (awarding one-third of the settlement fund in a TCPA case); *Krakauer v. Dish Network, L.L.C.,* supra * 2 (M.D.N.C. Dec. 23, 2019) (awarding one-third of the common fund in a TCPA case); *Kensington Physical Therapy, Inc. v. Jackson Therapy Partners, LLC*, No. 11-CV-2467, Doc. 105-1 at ¶ 5, Doc. 110 at ¶ 13 (D. Md. Oct. 21, 2014, and Feb. 12, 2015) (same).

Indeed, one-third of the fund appears to be "the market rate . . . in TCPA class action settlements" nationwide. *Krakauer,* at * 18 (M.D.N.C. Dec. 23, 2019) (quoting *Gonzalez v. TCR Sports*, 2019 U.S. Dist. LEXIS 87506 (S.D. Fla. May 24, 2019)). Thus, fees in TCPA cases across the country routinely equal or exceed 1/3 of the common fund. *See Birchmeier v.*

*Caribbean Cruise Line, Inc.*, 896 F.3d 792, 796-97 (7th Cir. 2018) (affirming attorney fees in TCPA class action of 36% of the fund); *Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 639 F. App'x 880, 883–84 (3d Cir. 2016) (affirming attorneys' fees constituting one-third of a settlement fund in a TCPA case); *Gonzalez,* 2019 U.S. Dist. LEXIS 87506, 2019 WL 2249941, at *6 ("[C]ourts in this district regularly base fee awards on the market rate of one-third of the common fund in TCPA class action settlements."); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 949-50 (D. Minn. 2016) (citing TCPA cases from three circuits where attorney's fees were awarded roughly "equal to one-third of the settlement fund"); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781 (Collecting cases nationwide and awarding 36% for the first $10 million); *Kolinek*, 311 F.R.D. at 503 (36% of fund in TCPA class settlement); *Burnett*, 2024 U.S. Dist. LEXIS 112165 at *18 (approving 1/3 of fund for fees in TCPA class action); *Braver v. Northstar Alarm Servs.,* No. CIV-17-0383-F, 2020 U.S. Dist. LEXIS 205133, at *10 (W.D. Okla. Nov. 3, 2020) (Awarding 1/3 of the fund in TCPA case)*; Jones v. I.Q. Data International, Inc.*, 2015 U.S. Dist. LEXIS 137209 (D. N.M. September 23, 2015) (one third in TCPA case); *Martin v. JTH Tax, Inc.*, No. 13-6923 (N.D. Ill. Sept. 16, 2015) (38% of total fund in TCPA case); *Lees v. Anthem Ins. Cos., Inc.*, No. 4:13CV1411 SNLJ, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (awarding 34 percent of common fund as attorneys' fees in TCPA class action); *Prater v. Medicredit, Inc.*, No. 4:14CV00159 ERW, 2015 WL 8331602, at *4 (E.D. Mo. Dec. 7, 2015) (awarding one third of the common fund in a TCPA class action); *Vandervort v. Balboa Cap. Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (awarding fees of one-third on TCPA class action); *Gottlieb v. Citgo Petroleum Corp.*, No. 9:16-cv-81911, 2017 U.S. Dist. LEXIS 197382, at *7 (S.D. Fla. Nov. 29, 2017) (granting fees and costs amounting to one-third of the $8,000,000 TCPA settlement fund); *Elzen v. Educator Grp. Plans, Ins. Servs.*, No. 1:18-cv-01373-WCG, 2019 U.S. Dist. LEXIS 170798, at *6 (E.D. Wis. Oct. 2, 2019)

19

(awarding class counsel fees of one-third the settlement fund in a TCPA class action).

As to the timing of payment, no fees will be paid until after approval and even then not until after the effective date at the expiration of the deadline to appeal. *App. 1 – Agreement* at ¶ 54. Considering all these factors, the relief provided to the class is more than adequate.

### d. The proposed Settlement treats Settlement Class Members equitably.

Fourth, the proposed settlement treats all class members equitably. Fed. R. Civ. P. 23(e)(2)(D). Here, each Settlement Class Member has identical TCPA claims and is entitled to a pro rata share of the fund. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (where class members are similarly situated with similar claims, equitable treatment is "assured by straightforward pro rata distribution of the limited fund"). No Settlement Class Member is treated differently, and each can object or opt out in the same fashion. Moreover, the automatic payment without the need for a claim form ensures that all class members will receive payment rather than the few who would take the time to submit claims. Because there is no disparate treatment between members, the Settlement merits approval.

### e. The Response from the Class Favors Approval

Finally, the lack of any opposition from the class strongly favors approval. No class member has opted out of the settlement and no class member has objected. *App. 2* at ¶ 19-20. While the claims administrator did receive a letter from an individual named Charles P███████, that individual is not a member of the class. Neither his name nor the contact information he provided is on the class list. *App. 2* at ¶ 20. Further, he complains of receiving unwanted phone calls from an entity called "benefit advisors" that has nothing to do with this case. *Id.*

"Non-class members have no standing to object, pursuant to a Rule 23(e) notice directed to class members, to a proposed class settlement." *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989); *see also In re: Mi Windows & Doors Inc. Prod. Liab. Litig.*, 2015 U.S. Dist. LEXIS

184471 (D.S.C. July 22, 2015) ("Under Rule 23(e), only class members have standing to object to a proposed settlement."), aff'd, 860 F.3d 218 (4th Cir. 2017). As Mr. P████ is not a member of the class, the Court should disregard his purported objection.

Putting aside[8] he is not a class member and complaining about different calls then at issue here, he fails to identify an aspect of the settlement that he finds to be objectionable. It is impossible to tell from his submission what issues he has with the settlement and his statements suggest he is conflating this action with some other complaint. *See e.g., id.* ("I would rather have new stereo headphones in lieu of unwanted infringement activity.") As there is no valid opposition to the settlement from the class, approval is strongly favored.

WHEREFORE, Plaintiff respectfully requests the Court grant final approval of the Settlement in the form attached as *Appendix 3*, which: (a) finds the Settlement fair, reasonable, and adequate; (b) directs implementation of the Settlement in accordance with the terms of the Settlement Agreement; (c) grants Plaintiff's pending motion for an award of attorneys' fees of one third of the common fund, which is $1,336,666; out of pocket expenses of $16,631 and (d) an incentive award in the amount of $25,000; and (e) retains jurisdiction to supervise the Settlement's implementation.

---

[8] Mr. P████'s purported objection is waived in any case. This Court's preliminary approval order sets forth a number of requirements for objections to the settlement and provides that any class member who fails to comply "will be deemed to have waived his, her or its objections, and will be forever barred from making any objections in the Action or any other related action or proceeding." *Doc. 52* at ¶ 15. These requirements, which are also set forth in the notice to the class, require objectors to file their objections with the court; to provide a class member ID, telephone number, and documentation sufficient to establish membership in the class. Mr. P████ did none of those things. *App 2* at Ex. F. Accordingly, his purported objection is waived.

Respectfully submitted,

/s/ Timothy J. Sostrin
Timothy J. Sostrin (pro hac vice)
Keith J. Keogh (pro hac vice)
KEOGH LAW, LTD.
55 W. Monroe St. Suite 3390
Chicago, IL 60603
tsostrin@KeoghLaw.com
keith@keoghlaw.com

Karl S. Gwaltney
Maginnis Law, PLLC
N.C. State Bar No. 45118
7706 Six Forks Road, Suite 101
Raleigh, North Carolina 27615
Telephone: 919-526-0450
Fax: 919-882-8763
kgwaltney@maginnishoward.com

*Counsel for Plaintiff*